IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CRAIG MOSS,** | : | |
| | : | |
| **Petitioner** | : | **CIVIL NO. 1:CV-05-1108** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **JOHN F. NELSON,** *et al.*, | : | |
| | : | |
| **Respondents** | : | |

# M E M O R A N D U M

Craig Moss ("Moss"), an inmate confined at the York Community Correction Center, in York, Pennsylvania, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a Franklin County aggravated assault conviction.  (Doc. 1 at 1.)  For the reasons set forth below, the petition for writ of habeas corpus will be denied.

## I.    Background

On March 16, 2000, following a jury trial in the Court of Common Pleas of Franklin County, Moss was convicted of aggravated assault of a corrections officer and sentenced to a term of incarceration of fifteen to 120 months.  (Doc. 34-5 at 2; Doc. 1 at 2.)  The pertinent facts are as follows:

> [Moss], at the time of the incident, was housed at the Franklin County Prison.  On August 1, 1999, Corrections Officer Ronald Roland ordered [Moss] back to his cell after he violated prison yard rules.  [Moss] refused to comply with Officer Roland's order, at which point the officer attempted

> to subdue [Moss]. [Moss] bit Officer Roland in the left breast during an ensuing physical struggle. [Moss] claimed he bit Officer Roland because he was being choked and the bite was self-defense.
>
> Tammy Sharpe, a licensed practical nurse employed at the prison, testified to her treatment of both Officer Roland and [Moss] following the incident. She indicated that Officer Roland had a bite mark above his left breast and a scratch on his right forearm. She testified on cross-examination that when going over [Moss], she saw what she believed was a heat rash or razor burn around his neck. She testified that she did not discover any marks indicative of choking. [Moss's] counsel asked Ms. Sharpe if he "was ever sent for x-rays or anything in regards to his incident?" She replied, "No, I would be aware of it if he was and he wasn't." Trial Court Opinion, 9/19/00 at 2-3.

(Doc. 34-5 at 2-3.)  He filed post-sentence motions for judgment of acquittal or, alternatively, a new trial.  (*Id.* at 2.)  After a hearing, the court denied the motions in an Opinion and Order dated September 19, 2000.  He filed a timely appeal in which he alleged the following trial court errors:  (1) failure to correct inaccurate testimony; (2) inadequate *voir dire*; (3) failure to strike a juror; (4) failure to give proposed bodily injury jury instruction; (5) failure to give a curative instruction addressing the prosecutor's "thieves and robbers" comment during closing argument; and, (6) failure to allow defense eyewitnesses to testify as to their belief of what danger the defendant was facing.  (Doc. 34-5 at 3-4.)  The judgment of sentence was affirmed on November 26, 2001.  (*Id.* at 8.)

On April 16, 2002, Moss filed a petition under Pennsylvania's Post Conviction Relief Act, 42 PA. CONS. STAT. §§ 9541, *et seq.* ("PCRA").  After review, the PCRA court denied the petition on January 17, 2003, without a hearing following proper notice.  (Doc. 34-9 at 2.)  Moss raised the following issues in a timely appeal to the Superior Court of Pennsylvania:  (1) denial of his 6th Amendment right to an impartial judge; (2) denial of his 5th, 6th, and 14th Amendment rights in that he was prosecuted by a prison board official for an instance that arose out of the prison; (3) the trial court deprived him of his 5th and 14th Amendment rights in failing to enter a directed verdict of acquittal when the Commonwealth failed to prove his guilt beyond a reasonable doubt and failed to establish beyond a reasonable doubt that he did not use justifiable force; (4) denial of his 5th, 6th and 14th Amendment rights to due process and a fair trial as a result of prosecutorial misconduct; (5) denial of his 5th, 6th and 14th Amendment rights when the Commonwealth engaged in trial by ambush tactics; (6) the trial court abused its discretion and deprived him of his 14th Amendment rights by granting the Commonwealth's motion for a sentence modification; (7) denial of his 6th Amendment right to effective assistance of counsel; (8) denial of his 14th Amendment right to effective assistance of appellate counsel; and, (9) trial counsel and appellate counsel were ineffective for failing to raise the issues on appeal.  (Doc. 65-2, at 3–5.)  In affirming the denial of PCRA

relief on January 30, 2004, the superior court agreed with the PCRA court's

conclusion that all of the claims, with the exception of the ineffective assistant of

counsel claims, were either waived for failing to raise them on direct appeal or were

previously litigated.   (Doc. 65-2, at 5–6,  *Commonwealth v. Moss*, 847 A.2d 759 (Pa.

Super. 2004) (unpublished memorandum)).   He filed an appeal to the Pennsylvania

Supreme Court, which was denied on November 30, 2004.  *See Commonwealth v.*

*Moss*, 863 A.2d 1145 (2004).

On August 10, 2004, Moss filed a second PCRA petition requesting a new

sentencing hearing in light of *Blakely v. Washington*, 542 U.S. 296 (2004).  On

August 23, 2004, the PCRA court denied relief as untimely.  (Doc. 34-9, at 2.)  Moss

appealed and the superior court affirmed the dismissal of the petition as untimely

filed.  (*Id.* at 6.)

Moss then filed the present federal petition on June 1, 2005.


II.   **Timeliness of Petition**

Section 2244 establishes a one-year statute of limitations for federal habeas

corpus petitions filed by a person in state custody.  28 U.S.C. § 2244(d)(1).  The

direct appeal proceedings concluded on November 26, 2001, and the judgment

became "final" within the meaning of § 2244(d)(1) by the conclusion of direct review

or by the expiration of time for seeking such review, including the 90-day period for filing a petition for writ of certiorari in the United States Supreme Court. *See Swartz v. Meyers*, 204 F.3d 417, 419 (3d Cir. 2000); *Morris v. Horn*, 187 F.3d 333, 337 n.1 (3d Cir. 1999); Sup. Ct. R. 13. Therefore, Moss' judgment became final on or about February 24, 2002, and he had one year from that date to file his federal petition. However, in computing the one-year period, the time during which a properly filed application for State post-conviction or other collateral review is pending shall not be counted toward any period of limitation. 28 U.S.C. § 2244(d)(2). The statute was tolled when Moss filed a timely PCRA petition on April 16, 2002. The statute began running again upon conclusion of the PCRA proceedings on November 30, 2004. Moss timely filed his federal petition approximately six months later.

### III.   Discussion

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 498-499 (1973). In challenging the fact and duration of his confinement, Moss raises a number of issues which can be grouped into the following categories: (1) denial of an impartial judge; (2) trial court error; (3) sufficiency of the evidence; (4) prosecutorial misconduct; (5) denial of effective assistance of trial

counsel, and (6) denial of effective assistance of appellate counsel.[1]  (Doc. 1.)  As

discussed in detail below, some of Moss' issues are unexhausted while others are

exhausted, but procedurally defaulted. Some are non-cognizable in a federal habeas

petition.  Some are fully exhausted and considered on the merits.

## A. <u>Exhaustion of State Court Remedies</u>

Habeas corpus relief cannot be granted unless all available state remedies have

been exhausted or there is an absence of available state corrective process, or

circumstances exist that render such process ineffective to protect the rights of the

applicant.  *See* 28 U.S.C. § 2254(b)(1).  The exhaustion requirement is grounded on

principles of comity in order to ensure that state courts have the initial opportunity to

review federal constitutional challenges to state convictions.  *See Werts v. Vaughn*,

228 F.3d 178, 192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full

opportunity to resolve any constitutional issues by invoking one complete round of

the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S.

838, 844–45 (1999).  Respect for the state court system requires that the petitioner

demonstrate that the claims in question have been "fairly presented to the state

---

[1] Moss separates the issues by uppercase letters and subdivides the categories by Roman numerals.  The Court will reference each issue by that method,  *i.e* "AI".

courts." *Castille v. Peoples*, 489 U.S. 346, 351 (1989).  Fair presentation also requires the petitioner to raise the claim in a procedural context in which the state courts can consider it on the merits.  *Id.*

The claims that an impartial judge denied Moss his right to cross examine witness Jaime Roberts, identified in the petition as issue AII, that he was denied his Sixth Amendment right to a fair trial, identified as issue D, and the prosecutorial misconduct claim found at issue I II, are unexhausted in that they have never been presented to the state courts.  (Doc. 1, at 7, 19, 41, respectively.)

Nor has issue GII, that trial counsel was ineffective for failing to obtain a medical record concerning a soft tissue injury, been presented to the state courts. (Doc. 1, at 25.)  Moss alleges that counsel failed to obtain his medical records.  "The reason that Petitioner's medical records were of critical importance to Petitioner's defense, is that petitioner was raising a claim of justification/self defense, for using force against the victim, to repel the victims [sic] attack of choking Petitioner, causing injury to Petitioner and placing Petitioner in fear of serious bodily injury and death."  (Doc. 1, at 26.)  It is his contention that the medical records contained a notation that he received soft tissue injuries to his neck and that such information would have contradicted testimony that he suffered no injury in the altercation.  (*Id.* at 25-26.) Initially, it appears that it was presented because the lack of evidence of a soft

tissue injury was discussed during the PCRA proceedings.  However, upon closer

examination, it is clear that the state court did not have the benefit of evidence upon

which Moss is presently relying.  Specifically, included as part of Moss's exhibits is a

medical record that contains an August 6, 1999 entry with the language "most likely

soft tissue injury."  During the PCRA appeal, in considering the issue of medical

records, the superior court concluded as follows:

> We note that nothing in the certified record indicates that medical records
> exist to substantiate Appellant's claim that the corrections officer inflicted
> soft tissue damage to Appellant's neck at the time of the assault underlying
> this appeal.  To the contrary, the medical records appended to the PCRA
> petition indicate that any marks on Appellant's neck were the result of "heat
> rash" or "razor burn."   PCRA Petition, 4/16/02, Exhibit "C" (Incident
> Report dated 8/1/99). We cannot conclude that trial counsel was ineffective
> for failing to obtain medical records pertaining to heat rash or razor burn.
> This would not have been helpful to Appellant's claim that the corrections
> officer inflicted soft tissue injuries to Appellant.

(Doc. 65-2, at 11.)  It is clear from the state court's decision that Moss never

submitted the August 6, 1999 medical record to the state court.  Consequently, the

issue of whether counsel was ineffective for failing to obtain this medical record for

trial was not fairly presented to the state court for review.

In addition, the claim that the trial court erred regarding admitting evidence of

Moss' prior prison misconduct record, issue AIII, is unexhausted.  (Doc. 1, at 9.)

Although this claim was presented to the PCRA court, it was not identified in the

appeal to the Pennsylvania Superior Court as a trial court error claim.  (Doc. 65-2.)

Lastly, claim L, that the state court erred in denying him relief pursuant to the

decision in *Blakely v. Washington*, 542 U.S. 296 (2004), is also unexhausted because

it was presented in his second PCRA petition, which was dismissed as untimely.

(Doc. 1, at 49; Doc. 34-9.)

If Moss could still present these federal claims to the state courts, the petition

would be dismissed without prejudice to his right to pursue the claims through a

PCRA petition.  However, the time for presenting the issues to the state court in

another PCRA has expired, 42 Pa. Con. Stat. Ann.  § 9545(b)(1), and the

Pennsylvania state courts have made it clear that the time limitations set forth in the

PCRA are jurisdictional.  *Commonwealth v. Fahy*, 737 A.2d 214 (1999);

*Commonwealth v. Banks*, 726 A.2d 374, 376 (1999); *Commonwealth v. Peterkin*, 722

A.2d 638, 641 (1998).  "Unlike a statute of limitations, a jurisdictional time limitation

is not subject to equitable principles such as tolling except as provided by statute.

Thus, the filing period is only extended as permitted; in the case of the PCRA, the

time limitations are extended upon satisfaction of the following exceptions found at §

9545(b)(1)(i)-(iii) . . . ."  *Fahy*, 737 A.2d at 222:

> (i) The failure to raise the claim previously was the result of interference by
> government officials with the presentation of the claim in violation of the

Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) The facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) The right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time provided in this section has been held by that court to apply retroactively.

Moss does not argue that "the failure to raise the claim[s] previously was the result of interference by government officials. . . ."  Nor could he argue that the "facts upon which the claim[s] [are] predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence. . . ."  The third exception is also unavailable to Moss; he does not argue that "the right[s] asserted [are] constitutional right[s] that [were] recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this

section and has been held by that court to apply retroactively."[2]  He is therefore

barred from proceeding further in state court.

"When a claim is not exhausted because it has not been 'fairly presented' to the

state courts, but state procedural rules bar the applicant from seeking further relief in

state courts, the exhaustion requirement is satisfied because there is 'an absence of

available State corrective process.' 28 U.S.C. § 2254(b).  In such cases, however,

applicants are considered to have procedurally defaulted their claims and federal

courts may not consider the merits of such claims unless the applicant establishes

'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse his or her

default.  *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991)."  *McCandless v.

Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999).  To demonstrate cause for a procedural

default, the petitioner must show that some objective external factor impeded

petitioner's efforts to comply with the state's procedural rule.  *See Murray v. Carrier*,

477 U.S. 478, 488 (1986).  "Prejudice" will be satisfied if the habeas petitioner shows

---

[2]Moss attempted to invoke this exception when he filed his second PCRA based on the *Blakely* decision.  The Pennsylvania Superior Court stated that "[b]ecause we find that the United States Supreme Court's pronouncement in *Blakely* did not apply to Moss's sentence and did not apply retroactively, Moss, whose direct appeal period expired, cannot claim the after-recognized constitutional right exception to the timing requirement of the Post Conviction Relief Act.  Accordingly, we affirm the PCRA court's dismissal of Moss's petition as untimely filed."  (Doc. 34-9, at 6.)

that the outcome was "unreliable or fundamentally unfair" as a result of a violation of federal law. *See Lockhart v. Fretwell*, 506 U.S. 364, 366 (1993); *Coleman*, 501 U.S. at 750.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496.

Moss has not alleged cause or prejudice. Nor has he demonstrated his actual innocence such that a lack of judicial review of these issues will constitute a fundamental miscarriage of justice. Consequently, he is precluded from pursuing these issues in a federal habeas corpus petition.

Likewise, Moss is barred from pursuing the impartial trial court claims set forth at AI, AIV, and AV, his prosecutorial misconduct claims found at HI, HII, and II, and his trial court abuse of discretion claim identified as K[3], due to procedural default. (Doc. 1, at 5, 11, 12, 36, 37, 39, and 46, respectively.) Application of the procedural

---

[3]This issue will be revisited in the ineffective assistance of counsel section *infra*.

default doctrine depends on the threshold question of whether the final state court presented with a federal claim refused to decide the merits based on an established state procedural rule of law independent of the federal claim and adequate to support the refusal. *Sistrunk v. Vaughn*, 96 F.3d 666, 673 (3d Cir. 1996). The "independent" prong of the inquiry asks "if the state law ground is so 'interwoven with federal law' that it cannot be said to be independent of the merits of a petitioner's federal claims." *Johnson v. Pinchak*, 392 F.3d 551, 557 (3d Cir. 2004) (citing *Coleman*, 501 U.S. at 740). If the last state court to be presented with a claim reached its merits despite a procedural bar, it removes the prohibition against federal habeas review. *Id.* (citation omitted). However, if the reviewing state court reached the merits as an alternative holding, the habeas court proceeds with the procedural default analysis. *Id.* at 558 (citing *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989)). Under the "adequate" prong, three considerations come to bear: 1) whether the state procedural rule speaks in unmistakable terms; 2) whether all state appellate courts refused to review the petitioner's claims on the merits; and 3) whether the state court's refusal is consistent with other decisions. *Johnson*, 392 F.3d at 558 (citing *Doctor* [*v. Walters*], 96 F.3d [675] at 683-84 [1996]).

Here, the Pennsylvania Superior Court summarized application of the waiver doctrine as follows:

> To be entitled to relief under the PCRA, a petitioner must plead and prove by a preponderance of the evidence that the conviction or sentence arose from one or more of the errors enumerated in section 9543(a)(2) of the PCRA. [*Commonwealth v. Payne*, 794 A.2d 902, 905 (Pa. Super. 2002), appeal denied, 570 Pa. 685, 808 A.2d 571 (2002)]. The petitioner must also demonstrate that the issues raised in the petition have not been previously litigated or waived. *Id.* (citing 42 Pa. C. S.A. § 9543(a)(3)). An allegation of error is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post-conviction proceeding. *Id.* (quoting 42 Pa.C.S.A. § 9444(b)). As the PCRA court noted, all of Appellant's claims are either waived for failing to raise them on direct appeal or else they are previously litigated in that they actually were so raised.

(Doc. 65-2, at 5.)  Under Pennsylvania law, "[a]n allegation of error is waived 'if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding.' 42 Pa. Con. Stat. Ann. § 9544(b)." *See Commonwealth v. Payne*, 794 A.2d 902, 905 (2002). There is no question that this rule is completely independent of any federal law and that the rule speaks in unmistakable terms. Further, both the PCRA court and the appellate court refused to review these claims on the merits, which, as noted by the appellate court, is consistent with other state court decisions. (Docs. 34-7, 34-8, 65-2.)  It is therefore concluded that because Moss failed to raise on direct appeal the issues of an impartial trial court, set forth at AI, AIV, and AV, the prosecutorial misconduct claims found at HI and HII, II, and the trial court abuse of discretion found at K, they are waived. Consequently, they are procedurally defaulted. He has not alleged cause

14

or prejudice.  Nor has he demonstrated his actual innocence such that a lack of review

by the court will constitute a fundamental miscarriage of justice.

All of Moss' remaining claims have been fairly presented to the state courts

and considered on the merits, either during his direct appeal or in the PCRA

proceedings.  Thus, the exhaustion requirement is satisfied.  However, as set forth

below, despite fair presentation, some claims are not cognizable in federal court.

### B.   <u>Non-Cognizable Claims</u>

"[I]t is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions."  *Estelle v. McGuire*, 502 U.S. 62, 67–68

(1991).  Rather, federal habeas review is restricted to claims based "on the ground

that [petitioner] is in custody in violation of the Constitution or laws or treaties of

the United States."  28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 67-68; *see also*

*Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Johnson v. Rosemeyer*, 117 F.3d 104 (3d

Cir. 1997).

### 1.  *Trial Court Error*

#### a.  Issue AVI - Whether the trial court erred when it prohibited Moss' witnesses  to testify as lay witnesses

Moss argues that he was denied his 6th and 14th Amendment rights when the

trial court denied his attempts to ask witnesses Singley and Ross, ". . . if they, based

on their observation, felt Petitioner's life was endanger [sic], based on their firsthand

knowledge, which would have been helpful in understanding Petitioner's testimony

and to determin[e] whether they percieved [sic] that the victim had and was using

excessive force against Petitioner." (Doc. 1, at 14, ¶ 4.)

The matter was addressed during Moss' direct appeal proceedings.  The trial

court discussed the issue in the following manner:

> After Mr. Singley testified that the defendant began to turn blue while in a chokehold, defense counsel asked him: "Do you feel Mr. Moss was in threat of serious bodily injury by Officer Roland choking?"  The Commonwealth objected on the grounds that the question called for the witness to give a conclusion as to what the defendant believed and the court sustained the objection. (N.T. Jury Trial, p. 100).  Later in questioning Mr. Singley about what he observed in the moments leading up to the physical altercation, defense counsel asked Mr. Singley: "Were you in fear of Mr. Moss's safety at that point?"  The Commonwealth objected to this evidence as being irrelevant as well as conclusory and the court sustained the objections. (N.T. Jury Trial, p. 101).  We also sustained the Commonweath's objection to the admission of similar testimony from Timothy Ross because the question before the jury was what the defendant believed about being in physical danger as a result of the corrections officers' actions and whether his belief that he was in danger was a reasonable one.  (N.T. Jury Trial, pp. 110-111).
>
> Although he did allege the corrections officers were the aggressors, he did not introduce evidence to prove any of the officers had a reputation for violence.  Instead, he tried to have Mr. Singley and Mr. Ross testify about how they personally felt watching the incident, which was an improper attempt to corroborate the defendant's position that he had a reasonable belief that he was in danger and was justified in biting Officer Roland and in trying to bite the other corrections officers.  Not only was this testimony

conclusory, irrelevant and speculative, it was an inappropriate attempt to
compensate for the absence of true character or reputation testimony.

(Doc. 34-4, at 11.)  On appeal, the Pennsylvania Superior Court agreed with the trial

court, finding as follows:

> Appellant proposed that two witnesses testify to whether they felt appellant
> was in danger of serious bodily injury and whether they feared for
> appellant's safety.  N.T. Proceedings of Jury Trial, 3/16/00, at 100.  This
> argument lacks merit.  As the trial court noted in its opinion, it is improper
> to corroborate the reasonableness of a defendant's beliefs through
> testimony of witnesses.  Trial Court Opinion, 12/19/00, at 9.

(Doc. 34-5, at 9.)  These excerpts from the record demonstrate that this claim is

simply not cognizable in a federal habeas proceeding because it implicates a violation

of state evidentiary rules, not federal law.  Hence, it is not a proper subject for federal

habeas review.  *See Johnson*, 117 F.3d at 109; *see also Geschwendt v. Ryan*, 967 F.2d

877, 888-89 (3d Cir. 1992); *Hawkins v. Carroll*, No. 03-1165-KAJ, 2005 WL

3336538, at *3 (D. Del. Dec. 8, 2005) (finding a violation of state evidentiary law is

not cognizable in a federal habeas proceeding); *McLaughin v. Carroll*, 270 F. Supp.

2d 490, 514 (D. Del. 2003) (same).

> b.  Issue AVII - Whether the trial court's denial of transcripts
> for his PCRA proceeding demonstrated judicial bias

Alleged errors in collateral proceedings are not a proper basis for habeas relief.

*See Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004) (stating that "[H]abeas

proceedings are not the appropriate forum . . . to pursue claims of error at the PCRA

proceeding. . . . It is the original trial that is the 'main event' for habeas purposes.").

The Third Circuit explained as follows:

> The federal courts are authorized to provide collateral relief where a
> petitioner is in state custody or under a federal sentence imposed in
> violation of the Constitution or the laws or treaties of the United States.
> Thus, the federal role in reviewing an application for habeas corpus is
> limited to evaluating what occurred in the state or federal proceedings that
> actually led to the petitioner's conviction; what occurred in the petitioner's
> collateral proceeding does not enter into the habeas calculation. We have
> often noted the general proposition that habeas proceedings are 'hybrid
> actions'; they are 'independent civil dispositions of completed criminal
> proceedings.' Federal habeas power is 'limited . . . to a determination of
> whether there has been an improper detention by virtue of the state court
> judgment.'

*Id.* (quoting *Hassine v. Zimmerman*, 160 F.3d 941, 954–55 (3d Cir. 1998)) (internal

citations omitted). Accordingly, this claim is not a cognizable basis for habeas relief.

*Lambert*, 387 F.3d at 247.

> c. Issue C - Whether the trial court erred when it refused to
> instruct the jury in accordance with *Commonwealth v.
> Wertelet*, 696 A.2d 206 (Pa. Super. 1997)

Moss argues that the trial court committed an error of state law in the

justification instructions when it refused to instruct the jury in accordance with the

case of *Commonwealth v. Wertelet*, 696 A.2d 206 (Pa. Super. 1997), as he proposed,

thereby depriving him of a "crucial and key element of his defense of justification."

18

(Doc. 1, at 17, ¶ 1.)  Respondents counter that the matter was raised on direct appeal

and that the Pennsylvania Superior Court found that the jury instructions given

adequately reflected the law.  (Doc. 63, at 6.)

> The superior court succinctly addressed the argument as follows:
>
> Appellant additionally argues the trial court should have molded a jury
> instruction to conform to this Court's holding in *Wertlet* [sic], *supra*.  This
> argument is meritless.  "A court's charge to the jury will be upheld if it
> adequately and accurately reflects the law and was sufficient to guide the
> jury properly in its deliberations." *Commonwealth v. Ritter*, 615 A.2d 442,
> 446 (Pa. Super. 1992) (citations omitted).  The trial judge, based on our
> review of the record, adequately instructed the jury on the law of
> aggravated assault in Pennsylvania.  N.T. Proceedings of Jury Trial,
> 3/16/00, at 160.  As such, an extended discussion of this claim is not
> warranted.

(Doc. 34-5, at 8.)  It is not within the province of a federal habeas court to re-examine

whether the trial court erred in failing to give Moss' proposed jury instruction on the

defense of justification.  Errors of state law cannot be repackaged as federal errors

simply by citing the Due Process Clause.  *See Johnson*, 117 F.3d at 110.  The United

States Supreme Court has made it clear that states define the elements of state

offenses.  *Id.*  "Accordingly, while there may be constitutionally required minimum

criteria which must be met for conduct to constitute a state criminal offense, in

general there is no constitutional reason why a state offense must include particular

elements." *Id.* (citing *McMillan v. Pennsylvania*, 477 U.S. 79, 84-86 (1986)).  This claim is not cognizable in the federal habeas forum.

### C.   <u>Merits</u>

A merits adjudication of the remaining claims is appropriate.  28 U.S.C. § 2254(d).  Section 2254(d) of Title 28 of the United States Code provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless the adjudication of the claim:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  To establish that the decision was contrary to federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome."  *Matteo v. Superintendent*, 171 F.3d 877, 888 (3d Cir. 1999).  Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the

decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id.*

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error. *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); *Matteo*, 171 F.3d at 888; *Thomas v. Varner*, 428 F.3d 492, 497–98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." *Mastracchio v. Vose*, 274 F.3d 590, 597–98 (1st Cir. 2001).

        1.    *Trial Court Error*

                a.  Issue B - Whether the trial court deprived Moss of his 6th and 14th Amendment rights by refusing to remove juror 185 for cause

Moss argues that the trial court erred when, on motion of defense counsel, it failed to remove juror 185 for cause. He specifically contends that the juror "needed

to be removed for cause . . .  do [sic] to his personal, daily, and close relations with prison officials."  (Doc. 1, at 16.)

Respondents argue that "petitioner has failed to allege any basis . . . to disturb the decision of the Trial Court to deny a challenge for cause, a decision which rests within the sound discretion of that Court*."  Commonwealth v. Lane*, 555 A.2d 1246 (Pa. Super 1989.) (Doc. 63, at 6.)

The Pennsylvania Superior Court found as follows during the direct appeal proceedings:

> The decision to remove a juror for cause "rests in the sound discretion of the trial judge and will not be reversed in the absence of palpable error." *Commonwealth v. Lane*, 555 A.2d 1246, 1248 (Pa. 1989) (citations omitted).  The trial judge, through *voir dire*, must evaluate a prospective juror's ability and willingness to eliminate any external influences and render a verdict according to the evidence.  *Id.*  The record reveals that the trial judge specifically asked this juror if his association with a potential trial witness would interfere with his ability to serve as a juror.  N.T. Proceedings of Jury Selections, 3/13/00, at 9.  The juror unequivocally answered, "[n]o."  *Id.*  Without evidence of a gross error, we will not disturb the independent judgment of the trial judge who had the benefit of evaluating this juror's answers and demeanor.

(Doc. 34-5 at 6-7.)  The notes of testimony relied upon by the superior court are as follows:

> THE COURT:  Okay, thank you very much.  Anyone else on those two names?  Yes sir.

22

JUROR NO. 185:  I know Bob Lyons pretty well.  My neighbor, the gentleman that lives beside me is a sergeant [at the correctional institution], you just mentioned his name.

THE COURT:  And your name, sir?

JUROR NO. 185:  Larry Stoner.

THE COURT:  How long have you known Mr. Lyons?

JUROR NO. 185:  Five years.

THE COURT:  Do you see him on a regular basis presently?

JUROR NO. 185:  Not now, no.

THE COURT:  You don't see him

JUROR NO. 185:  No.

THE COURT:  When was the last time you saw him with any frequency?

JUROR NO. 185:  Month and a half ago.

THE COURT: Okay, all right, do you believe your association with Mr. Lyons would interfere with your ability to sit as a juror in this case:

JUROR NO. 185:  No.

THE COURT:  Thank you.

(Doc. 34-2, at pp. 10-11.)  Thereafter, trial counsel made a motion to strike juror 185 for cause based upon his acquaintance with a Commonwealth witness.  The court denied the motion because "we believe that Mr. Stoner said that despite this prior

23

acquaintance with Mr. Lyons that would not interfere with his ability to render a fair verdict." (*Id.* at 24.)

The Supreme Court often has stressed that "while impaneling a jury the trial court has a serious duty to determine the question of actual bias, and a broad discretion in its rulings on challenges therefor." *Dennis v. United States*, 339 U.S. 162, 168 (1950).  Actual bias occurs when the juror cannot set aside that preconceived notion and render a decision based upon the evidence presented in court.  *See Irvin v. Dowd*, 366 U.S. 717, 723 (1961).  Moreover, the question of bias is one of fact best determined by the trial court's own determinations as to impartiality, credibility, and demeanor.  *See Patton v. Yount*, 467 U.S. 1025, 1036 (1984); *Rosales-Lopez  v. United States*, 451 U.S. 182 (1981).  Accordingly, the reviewing court should not lightly second-guess the conclusion of the trial court who heard and observed the *voir dire*.  *See Rosales-Lopez*, 451 U.S. at 188.

Based on the above, it is clear that the state court analysis is neither "contrary to" or an "unreasonable application of" this clearly established federal precedent. Nor was the court's decision based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[4]

---

[4]This analysis is equally applicable to Moss' argument in GI that trial counsel erred when, rather than striking Juror 185 for cause, he "relied upon the arbitrary actions of the trial court. . . ." (Doc. 1, at 24.)  Moss raised this issue during his

2.     *Sufficiency of the Evidence*

a.    Issues AII, E, and F - Whether there was sufficient evidence to establish Moss' guilt beyond a reasonable doubt

In issues AII, E, and F, Moss claims that the verdict was not supported by sufficient evidence.  (Doc. 1,  pp. 7–9, 20–23, respectively.)  Where a habeas petitioner challenges his incarceration on the ground that the evidence was insufficient to support a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  In considering the sufficiency of the evidence on direct appeal, the Pennsylvania Superior Court set forth the applicable elements necessary to sustain a conviction for aggravated assault and evaluated the evidence that supported each element.  There is no question that the state court's review of the evidence was in accord with applicable Federal law.

In support of his contention that the decision was an unreasonable determination of the facts in light of the evidence presented, he argues that the

_____

PCRA appeal.  However, the superior court declined to revisit the issue because the biased juror claim was fully adjudicated during the direct appeal proceedings and found to be meritless. *Commonwealth v. Moss*, No. 1891 MDA 2000, unpublished memorandum at 4-6 (Pa. Super. filed November 26, 2001).  (Doc. 65-2, at 9.) Therefore, no further discussion of this issue is warranted.

Commonwealth never produced any evidence that he initiated the incident or that he attempted to cause his victim harm.  (Doc. 1, at 21.)  He further argues that no evidence was produced to demonstrate that he "took any more defensive actions against the victim."  (*Id.* at 23.)

Where historical facts support conflicting inferences, the habeas court engaging in sufficiency of the evidence review must presume that the trier of fact resolved those conflicts in favor of the prosecution.  *Jackson*, 443 U.S. at 326.  The habeas court must consider the types of evidence the state courts deem relevant to proving the elements of the offense " 'with explicit reference to the substantive elements of the criminal offense as defined by state law.' "  *Orban v. Vaughn*, 123 F.3d 727, 731 (3d Cir. 1997) (quoting *Jackson*, 443 U.S. at 324 n.16).  This is required because the elements of the criminal offense are defined by state law.  *See Jackson*, 443 U.S. at 324 n.16.

"A person is guilty of aggravated assault if he: attempts to cause or intentionally, knowingly, or recklessly causes bodily injury to any officers, agents, employees . . .  while in the performance of their duties."  (Doc. 34-5, at 7 n.2, citing 18 Pa. Con. Stat. Ann. § 2702(a)(3)).  The superior court noted that despite Moss' contention to the contrary, the Commonwealth only needed to prove that the victim suffered bodily injury, not "serious bodily injury."  (*Id.* at 7.)  "Officer Roland

suffered a bite mark requiring an antibiotic ointment and a tetanus shot.  N.T.

Proceedings of Jury Trial, 3/16/00, at 65." (*Id.* at 8.)  In addition, he suffered

discomfort for four of five days following the incident.  (*Id.*)  The court also observed

that Moss's conduct immediately following the bite, the flailing of his head and

movement of his mouth, allowed the jury to infer the assault would have continued if

he were not subdued.  (*Id.*)  The court concluded that the above facts were sufficient

to support the jury's finding that Moss caused bodily injury, warranting the

conviction for aggravated assault.  (*Id.*)  Moss has failed to convince the court that

this conclusion should be disturbed.  Accordingly, he is not entitled to relief on his

sufficiency of the evidence claims.

### 3.    *Ineffective Assistance of Counsel*

The Sixth Amendment guarantees criminal defendants the right to the effective

assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 685–86 (1984).  A

defendant alleging ineffective assistance must satisfy the familiar two-part test set

forth in S*trickland*:

> First, the defendant must show that counsel's performance was deficient.
> This requires showing that counsel made errors so serious that counsel was
> not functioning as the "counsel" guaranteed the defendant by the Sixth
> Amendment. Second, the defendant must show that the deficient
> performance prejudiced the defense. This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial, a trial
> whose result is reliable.

*Id.* at 687.  To show deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." *Id.* at 687–88.  "Judicial scrutiny of counsel's performance must be highly deferential . . . [and] a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  To demonstrate prejudice, the defendant must show that counsel's deficient performance "actually had an adverse effect on the defense." *Id.* at 693.  "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.*  Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  The performance and prejudice prongs of *Strickland* may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* at 697.

Where state courts have considered a claim for ineffective assistance of counsel, a federal court's review is governed by 28 U.S.C. § 2254(d)(1).  A federal court does not render an independent judgment, but, rather, determines whether the state court decision is contrary to or involved an unreasonable application of the

*Strickland* test. *See* 28 U.S.C. § 2254(d) (1); *Rompilla v. Horn*, 545 U.S. 374, 380,

(2005).

The Pennsylvania Superior Court utilized the following standard of review in

analyzing Moss' ineffective assistance of counsel claims during the PCRA

proceedings:

> To obtain relief under the PCRA premised upon a claim that counsel was ineffective, the petitioner must establish beyond a preponderance of the evidence that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *Payne,* 794 A.2d at 905.   This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) the petitioner was prejudiced by counsel's act or omission. *Id.* To prove prejudice, the petitioner must show that "but for" counsel's act or omission, the outcome of the proceedings likely would have been different absent counsel's alleged ineffectiveness. *Commonwealth v. Cox*, 556 Pa. 368, 382-83, 728 A.2d 923, 930 (1999), *cert. denied*, 533 U.S. 904 (2001).  Our law presumes that counsel was effective and placed the burden upon the petitioner to prove otherwise. *Payne*, 79 A.2d at 906.   Counsel cannot be deemed ineffective for failing to pursue a meritless claim.  *Id.*

(Doc. 65-2, at 6.)   This standard is materially similar to the standard articulated in

*Strickland*.  *See Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000).  Therefore, it

cannot be considered "contrary to" federal law.  *Henderson v. DiGuglielmo*, 138 Fed.

Appx. 463, 469 (3d Cir. 2005).  The focus then is whether the state court rulings on

ineffective assistance claims constitute an unreasonable application of governing

federal law. Against this background, the Court will consider each of Moss'

allegations of ineffectiveness.

> a.  Issue GIII - Counsel failed to object to a surprise witness

During *voir dire*, the trial court apprised the jurors of the names of prospective

witnesses.  (Doc. 1, at 27.)  Warden Ray Rosenberry was not included in the witness

list, but was called to testify.  "Trial counsel, who knew this witness had never been

mentioned as a purposed [sic] witness during voir dire (N.J.S. pg 2.7), nevertheless,

failed to object to the Commonwealth calling this witness to the stand." (Doc. 1, at

25, ¶ 5.)  It is Moss's position that counsel's failure to object  was unreasonable and

prejudicial.  Specifically, "it was through this witness (Ray Rosenberry), that the

Commonwealth, introduced the surprise, inflamatory [sic], prejudicial character

evidence, that further deprived Petitioner of a fair trial."  (Doc. 1, at 28, ¶ 10.)

The PCRA court found that this issue lacked arguable merit inasmuch as the

Commonwealth was not required to give the defendant advance notice of its lay

witnesses under Pennsylvania Rule of Criminal Procedure 573.  (Doc. 34-7 at 3, ¶ 5.)

Significantly, when the underlying substantive claim is found to be without merit,

counsel cannot be deemed ineffective for failing to take the action upon which this

claim is based.  *See Hartley v. Vaughn*, 186 F.3d 367, 372 (3d Cir. 1999) (finding no

unreasonable attorney performance where the underlying claims had been found to be

without merit); *Parrish v. Fulcomer*, 150 F.3d 326, 328 (3d Cir. 1998) (holding no

ineffective assistance where claim not pursued by counsel is without merit).  Moss is

not entitled to relief on this claim.

> b.   Issues GIV, GV, GVI - Counsel failed to object to
> inadmissible, inflammatory, prejudicial character evidence
> introduced by the prosecution, and other prosecutorial
> misconduct, which insured that Petitioner was convicted of
> aggravated assault

Moss argues that trial counsel was ineffective for failing to object to

inadmissible, inflammatory, prejudicial character evidence, *i.e.,* his prison misconduct

history, introduced by the prosecution through the prison warden.  Also, the

admission of this evidence opened the door to allow testimony that the conduct for

which he was being tried resulted in a guilty finding at his prison misconduct hearing.

This issue was presented during the PCRA proceedings.  The PCRA court

summarized the issue as follows in an order notifying the parties of its intention to

dismiss the PCRA without a hearing pursuant to Pennsylvania Rule of Criminal

Procedure 907(1) considered the issue and ruled as follows:

> The defendant alleges the court erred in allowing the Commonwealth to
> introduce evidence at trial of his misconducts while incarcerated in Franklin
> County Prison from 1995 onward.  This issue has no arguable merit insofar
> as the misconducts reports, all prepared by corrections officers other than
> the victim corrections officer, were relevant to the Commonwealth's ability
> to respond to the defendant's theory of the case.  The defendant's theory

31

> was that the victim corrections officer was the aggressor who attacked the
> defendant based solely on a personal grudge.

(Doc. 34-7, at 3-4, ¶ 8.)  The PCRA Court reiterated the above finding in its

subsequent opinion and order requesting that the superior court affirm the order

dismissing the PCRA petition.  (Doc. 34-8, at 7, 8.)  On appeal, the superior court

stated that "We have inspected the certified record and have determined that it

supports the PCRA court's analysis and resolution of these issues.  We therefore

affirm on the basis of the PCRA court opinion with regard to these claims."  (Doc.

65-2, at 10.)  Notably, it is not the court's role on habeas review to decide whether a

state trial judge's decision to admit evidence pursuant to state evidentiary rules was

proper. *See Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983). State court rulings

on the admissibility of evidence rarely will serve as a ground for granting a writ of

habeas corpus.  *Crane v. Kentucky*, 476 U.S. at 689–90 (1986.)  "Thus, a federal court

cannot disturb on due process grounds a state court's decision to admit prior bad acts

evidence unless the admission of the evidence was arbitrary or so prejudicial that it

rendered the trial fundamentally unfair."  *Walters v. Maass*, 45 F.3d 1355, 1357

(9th Cir. 1995).  As noted by the state courts, this clearly is not the case.  Based on

the foregoing, it is clear that the underlying claim regarding the admission of the

evidence lacks arguable merit.  Consequently, counsel cannot be found to be ineffective.

With respect to his claim concerning counsel's failure to object to the prosecution's reference to Moss' witnesses as "thieves and robbers" during summation, the court found that "[i]nsofar as this was an accurate characterization in light of the witnesses's prior convictions, counsel's failure to object cannot constitute ineffectiveness and therefore this issue has no arguable merit."  (Doc. 34-7, at 4, ¶ 11.)  An objectively reasonable trial lawyer might decide, as a matter of sound trial strategy, that no benefit could be gained from objecting during the prosecution's closing argument. Counsel could have reasonably believed that objecting would have only further highlighted the comments and put them in the forefront of the jury's mind during its deliberations.  Because the issue has no arguable merit, relief on this claim is denied.

Likewise, his claim that counsel was ineffective for failing to object to the prosecutor vouching for his own witnesses while labeling Moss' witnesses as liars was found by the PCRA court to have no arguable merit because the "district attorney's approach to the evidence and argument was wholly within proper bounds." (Doc. 35-8, at 6-7.)  The superior court "inspected the certified record and determined

that it supports the PCRA court's analysis and resolution of these issues."  (Doc. 65-2, at 10.)

The United States Supreme Court has held that "it is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Where "specific guarantees of the Bill of Rights are involved, [the Supreme] Court has taken special care to assure that prosecutorial misconduct in no way impermissibly infringes them."  *Id.* at 642.  The amount or weight of the evidence is crucial to determining whether the prosecutor's statements before the jury were so prejudicial as to result in a denial of due process.  *See Darden*, 477 U.S. at 182; *Donnelly*, 416 U.S. at 644; *Moore v. Morton*, 255 F.3d 95, 111 (3d Cir. 2001). As the Supreme Court explained in *Darden,*

> Under this standard of review, we agree with the reasoning of every court to consider these comments that they did not deprive petitioner of a fair trial. The prosecutors' argument did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent.

*Darden*, 477 U.S. at 181-182 (footnote omitted).  Moss has failed to establish that the state law conclusions involved an unreasonable application of clearly established Federal law.

> c.  Issue K - Counsel failed to adequately represent Moss at the sentencing modification hearing

Moss argues that counsel did not adequately represent him with regard to the Commonwealth's sentencing modification request.  (Doc. 1, at 46.)  The PCRA court found that the issue lacked arguable merit "insofar as the court was entitled to consider additional information about the defendant's prison misconducts in assessing his assaultive and disruptive conduct.  That information was relevant in light of the current charge which arose in a prison yard where the defendant's behavior created an atmosphere conducive to prison unrest."  (Doc. 34-7, at 5, ¶ 15.) The superior court found as follows:

> This claim has been cast in the form of an allegation of ineffectiveness in an attempt to preserve it from being deemed waived for failure to raise it on direct appeal.  The crux of Appellant's claim is his assertion that the trial court was not permitted to reconsider matter of record as set forth in the pre-sentence report once the order of sentence was signed.  However, the PCRA court opinion has explained that the pre-sentence report was incomplete:
>
> > The record clearly shows the court modified the sentence upon motion of the Commonwealth because we had not been provided with complete information about the [petitioner's] prison misconducts when we initially

> imposed sentence.  It was wholly appropriate for the court
> to reconsider the sentence under these circumstances.

> PCRA Court Opinion, 3/4/03, at 3.  Based on the additional report provided
> by the Commonwealth, the trial court concluded that it was appropriate to
> impose sentence in the standard rather than in the mitigated sentencing
> range.  *Id.*  Appellant has presented no authority for the proposition that the
> Commonwealth was not entitled to supplement the pre-sentence report nor
> has he explained any basis upon which we could conclude that the trial
> court was not entitled to act upon the corrected report.  In the absence of
> such authority, we cannot conclude that all counsel were ineffective for
> failing to assert this claim.

(Doc. 65-2, at 12-13.)  As noted above, when the underlying substantive claim is

found to be without merit, counsel cannot be deemed ineffective for having taken the

action upon which this claim is based.  *See Hartley*, 186 F.3d at 372; *Parrish*, 150

F.3d at 328.   Based upon a review of the record, it cannot be said that the state

court's rejection of this ineffective assistance of counsel claim is an unreasonable

application of applicable federal law.  Relief on this claim is not warranted.

> d.  Issue M - Ineffective assistance of appellate counsel

In his PCRA, Moss contends that appellate counsel was ineffective for

failing to raise various issues.  The PCRA court stated that "where individual claims

of error fall for lack of merit, there can be no cumulative prejudicial effect when there

was no harm in the first place.  *Commonwealth v. Fisher*, 813 A.2d 761, 773 (2002)."

(Doc. 65-2.)  This determination is clearly in line with the caselaw finding that there

36

can be no ineffectiveness where the underlying claims had been found to be without

merit.  Moss is not entitled to relief on this claim.

>    *4.   Prosecutorial Misconduct*

>    >    a.   Issue J - Whether the Commonwealth violated his due
>    >    process rights in failing to correct false testimony

Moss argues that Commonwealth witness Tammy Sharpe, "was asked '[a]re

you aware whether or not [Petitioner] was ever sent for x-rays or anything in regard to

this incident' to wit Ms. Sharpe, falsely replied, 'No, I would be aware if he was and

he wasn't.'  (N.T.T. pg 66–67).  This false testimony, by Nurse Sharpe, prohibited

Petitioner from arguing that after x-rays were taken, the prison doctor denoted that

Petitioner did sustain 'soft tissue injuries to his neck.' "  (Doc. 1, at 44, ¶¶ 9–10.)

Further, "[t]he use of perjured testimony constitutes a due process violation when

there is any reasonable likelihood that the false testimony could have affected the

judgment: the favorable evidence in this case could reasonably be taken to put the

whole case in such a different light as to undermind [sic] confidence in the verdict."

(*Id.* at 45, ¶ 14.)

A federal due process claim based on the prosecution's withholding of or

failure to produce evidence is known as a " *Brady* claim" originating in the United

States Supreme Court holding in *Brady v. Maryland*, 373 U.S. 83 (1963).  *Brady* held

"the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. The Court identified the three elements of a *Brady* claim in *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). First, "the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching." *Id.* Second, "the evidence must have been suppressed by the State, either willfully or inadvertently." *Id.* Third, "prejudice must have ensued." *Id.* Every failure to disclose favorable evidence does not rise to the level of a constitutional violation. *See Kyles v. Whitley*, 514 U.S. 419, 436–37 (1995). The failure to disclose constitutes a due process violation "only if the government's evidentiary suppression undermines confidence in the outcome of the trial." *Id.* at 434. The failure to disclose evidence is not a *Brady* violation "unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler*, 527 U.S. at 281.

The *Brady* issue was considered on direct appeal and disposed of as follows:

This Court, utilizing the Federal *Brady v. Maryland*, 373 U.S. 83 (1963) standard, has held where the prosecution obtains a conviction through the use of false or perjured testimony, a strict standard of materiality must be applied. *Commonwealth v. Romansky*, 702 A.2d 1064, 1067 (Pa. Super. 1997) (citing *Commonwealth v. Wallace*, 455 A.2d 1187 (Pa. 1983)). False

testimony is considered material if it could, in any reasonable likelihood, have affected a jury's verdict. *Id.*

Tammy Sharpe, on cross-examination, testified that after examining appellant's neck she found only "what looked like a heat rash or razor burn like prickly heat." N.T. Proceedings of Jury Trial, 3/16/00, at 66. Appellant's counsel asked Ms. Sharpe if she was aware if appellant ever had x-rays as a result of this incident. *Id.* at 67. She answered, confidently, that he had not. *Id.* In fact, the record reveals appellant had gone for x-rays. Trial Court Opinion, 9/19/00, at 3. Ms. Sharpe's inaccurate testimony is not material. The trial court noted in its opinion that a doctor found the x-rays to be negative. Appellant, additionally, never sought the prison doctor's testimony to ascertain his reasons for ordering the x-rays. Trial Court Opinion, 9/19/00, at 5. It is unclear what value, if any, the knowledge that appellant had x-rays would have had to the jury. We conclude that the inaccurate testimony is not material to appellant's conviction; it did not affect the jury's verdict.

(Doc. 34-5, at pp. 4-5.) It is undisputed that the state court relied on the pertinent

Federal law in reaching the above conclusion. And, all indications from the state

court record, are that the decision was not an unreasonable determination of the facts

in light of the evidence presented.


**IV.**   **Conclusion**

Based on the foregoing, the petition for writ of habeas corpus will be denied.

**V.**   **Certificate of Appealability Denied**

Pursuant to 28 U.S.C. § 2253(c)(1)(A), a petitioner must obtain a certificate of

appealability ("COA") to appeal a final order denying a habeas corpus petition under

28 U.S.C. § 2254.  A district court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2).  When a court denies a petitioner's habeas claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the claims debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).  However, when a district court denies a petition on procedural grounds, a COA should issue if: (1) jurists of reason would find it debatable whether the petition states a valid claim of denial of a constitutional rights; and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See id*.

Here, jurists of reason would not find it debatable or wrong that petitioner is not entitled to relief on the merits.  Nor would jurists of reason find it debatable that this court was correct in its procedural rulings.  Consequently, no certificate of appealability will issue.

An appropriate order follows.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  October 9, 2008.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CRAIG MOSS,** | : | **CIVIL NO. 1:CV-05-1108** |
| | : | |
| **Petitioner** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN F. NELSON,** *et al.*, | : | |
| | : | |
| **Respondents** | : | |

# O R D E R

Upon consideration of the petition for writ of habeas corpus (Doc. 1), and for

the reasons set forth in the accompanying memorandum, **IT IS HEREBY**

**ORDERED THAT**:

1.  The petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C.

§ 2254 is **DENIED** as follows:

    a.  Petitioner's claims identified as AI, AII, AIII, AIV, AV, D, GII, HI,

HII, II, I II, and L are DENIED due to procedural default.

    b.  Claims AVI, AVII and C are DENIED as they are non-cognizable in a

federal habeas petition.

    c.  All remaining claims presented in the petition are DENIED based

upon petitioner's failure to demonstrate that state court decisions were either

contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States; or that

those decisions were based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceedings.  28 U.S.C.

§ 2254(d)(1) and (2).

2.  The Clerk of Court is directed to CLOSE this case.

3.  There is no basis for the issuance of a certificate of appealabilty. *See* 28

U.S.C. § 2253(c).

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  October 9, 2008.